Caston, J.
 

 In our opinion, this is a very plain case against the appellant, in all cases the effect of long and notorious possession, as affording presumptive evidence of right, is very powerful. In questions of boundary especially, it authorises the inference of any fact which can rationally be inferred to make such possession consistent with right. It shews a claim distinctly asserted by the possessor, and acquiesced in by those most interested to repel it if unfounded, and most likely to ascertain "whether it be or be not well founded.
 
 As
 
 such it is at least tantamount to a general reputation of boundary.
 

 In the deed of the sheriff to Edmund Norcom, of the 15th March, 1706, the boundaries of the land conveyed, so far as they affect the present controversy, are thus described, viz; “beginning at a small dogwood at the crooked gully, and running along John Simons’ and Thomas Charlton’s (deceased) line, South 18, East 62 poles to a poplar; thence along Charlton’s line No. 70s, East 47 poles to a hickory, Charlton’s corner; thence along Charlton’s line, So. 25, East 187 poles, to the Sound side.” The beginning of the deed being admitted on all hands, the dispute turned
 
 mainly
 
 upon the inquiry where were the second and third coméis of this tract?
 
 In law,
 
 these corners were “the hickory” and “the poplar,” wherever situate; and the evidence offered was received, as tending to establish where these trees were. It is conceded on the part of the defendant, that if the trees yet existed, and could be identified, they would controul the courses and distances called for in the deed. But they are gone, and surely the destruction or decay of the trees did not change the
 
 termini
 
 of the land. Certainly it was competent to shew, after their destruction or decay, where these trees had stood; and this fact might be shewn, either by direct testimony thereof, or by testimony from which the fact could be satisfactorily inferred.
 
 McNeill v Massey,
 
 3 Hawks 91. Now, to us, it seems that the testimony given was not only
 
 *55
 
 pertinent and relevant for this purpose, but was entitled to very great consideration from the jury.
 

 The deed informs ifs that the poplar will be found by running from the beginning corner, South 18, East 62 poles,
 
 along Charlton's line.
 
 It tells us that the hickory is known as “ Charlton’s corner,” and that it will be found by running from the poplar No.
 
 72i,
 
 East 47 poles, “along Charlton’s line.” Charlton’s line is then one of the the indicia by which the poplar and the hickory are to be ascertained. — . They are both
 
 in
 
 that line, and the hickory is one of Charl-ton’s corners. Besides, the next line from this corner of Charlton’s, is represented as running thence along Charlton’s line to the Sound side. Thus Charlton’s line is referred to throughout as a known boundary, by which the corners of this tract are to be ascertained ,* and certainly if it were a known line, and can now be found, it furnishes, according to all our adjudged cases, a much surer and safer guide to direct us to these
 
 termini,
 
 than can be afforded by the courses and distances called for.
 

 Now, when it is seen that almost from the date of this deed a fence has been uninterruptedly kept up, extending through the entire body of the cleared laud; that during all this time it was held without dispute to be the line of division between the Charlton and Norcom tracts; and that, from the termination of this fence, and in its direction continued through the woods, an old line of marked trees is found leading down to the Sound; it would be difficult to resist the conviction, that Charlton’s line was known ; that the possession of the adjoining proprietors respectively conformed thereto; and that the fence and the line of marked trees from the fence to the Sound indicate that known line at this day.
 

 It is not necessary that we should decide the question arising upon the instruction which was prayed for by the plaintiff, and which the' court declined to give. But as the point appears to us free from difficulty, We will not withhold the expression of our opinion upon it. When a Course is resorted to for want of a better guide to find the
 
 terminus
 
 of a tract of land, it is the course as it existed at the time to
 
 *56
 
 which the description of the tract refers. And if it be shewn to the satisfaction of the jury, that, because of the magnetic variation, that course -is not the same with the course which the needle now points out, it is their duty to allow for the variation, so as to enable them to pursue the direction of the original course. However the needle may vary, the boundaries of the land remain unchanged.
 

 Per Curiam. ' Judgment affirmed.